IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CRAYTONIA BADGER                                              PLAINTIFF

              v.                   Civil No. 1:18-cv-01052

KELLY BLAIR, Investigator Columbia
County, Arkansas; KOBY SCHMITTON,
Investigator Columbia County, Arkansas;
and JANET DELANEY, Jail Administrator,
Columbia County Jail                                          DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Craytonia Badger, under 42 U.S.C. §

1983.  Before the Court is a Motion for Summary Judgment filed by Defendants Kelly Blair, Koby

Schmitton and Janet Delaney.  (ECF No. 21).  Plaintiff has filed a Response. (ECF No. 27).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey,

Chief United States District Judge, referred this case to the undersigned for the purpose of making

a Report and Recommendation.

## I. BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") –

East Arkansas Regional Unit.  His claims in this action arise from alleged incidents that occurred

between November 18, 2015 and December 7, 2015 while he was incarcerated in the Columbia

County Detention Center ("CCDC") as a pre-trial detainee.  (ECF No. 1, p. 3).

### A.  Factual Background

Plaintiff was booked into the custody of the CCDC on August 19, 2015.  (ECF No. 27, p.

4).  On September 4, 2015, Plaintiff was charged with committing two counts of A.C.A. § 5-54-

119, Furnishing Prohibited Articles in the CCDC.  (ECF No. 23-3, pp. 5-10).

1

On November 18, 2015, Defendant Blair filed an incident report stating:

On Wednesday November 18, 2015, Investigator Kelly Blair was listening to inmate phone calls as part of an ongoing investigation. Blair was listening to a call from Lakisha Wells. She called 662-444-4071. She talked to the lady and told her to call a number. At this point a man's voice comes on and Blair recognized the voice of Craytonia Badger. Blair has listened to many hours of conversations of this inmate. He then checked City Tele Coin records and found that no one had made a phone call from Pod 1, the pod that Badger was being held [in]. Blair looked at all City Tele Coin calls and that is the only approved phone in the pod.

While Mr. Badger was talking to Lakisha Wells he said that he had just got off the phone with "Charles." Blair looked and there was no record of such a call. Blair then notified Chief Deputy Doug Wood. Blair told Wood that he suspected that Mr. Badger had another cell phone in the pod. Chief Deputy Wood, Captain Mike McWilliams, Deputy Greg Hawley, Investigator Kelly Blair, Investigator Koby Schmittou, and bailiff Ryland Dare made a plan and went to Pod One for a search. Janet Delaney also was present.

Schmittou found a broken phone hidden in the wall of the bathroom of the pod. Blair later reached in a hole in the shower and found a sock, tied to a pipe with a piece of string. He pulled the sock out and found a plastic bag in the sock. Inside the bag was a Samsung flip phone and a charger. Deputies also found assorted e-cig batteries that were connected to make a charger. They also found strips of wire that had been stripped from a wall monitor.

Blair looked in Badger's legal papers and saw photographs of medications in a pharmacy. Blair then took all of the paper work in Mr. Badger's area and boxed it. The papers were not looked at, just sealed.

Investigators then took the phone and charged it. Deputies were concerned that an escape might be being planned. They saw that no messages could be traced to that and the phone was sealed. It appeared that over 100 calls had been made or received by this phone. Investigators knew that many of the numbers on it were ones that Mr. Badger calls on a regular basis, on the City Tele Coin System.

(ECF No. 23-3, p. 51). During the search of Pod 1 Plaintiff's "legal papers were taken because it was determined that they were being rolled up and used to make devices to help reach and otherwise smuggle contraband within the facility." (ECF No. 23-8, p. 2). Plaintiff disputes this claim. He also denies he was the inmate speaking to Ms. Wells and denies he had possession of

or used a cell phone while he was housed in Pod 1. (ECF No. 27, p. 6). Later that day, Columbia County District Court Judge Michael Epley ordered a search warrant for the Black Samsung Verizon flip phone found during the seizure that took place in Pod 1 in the CCDC. *Id.* at pp. 52-53. Defendant Schmittou then submitted an evidence submission form and turned in the Samsung Verizon flip phone to the Arkansas State Crime Laboratory. *Id.* pp. 54-55.

 On November 18, 2015, Plaintiff was moved from Pod 1 to Pod 5 in the CCDC. He remained in Pod 5 until December 7, 2015. (ECF No. 27, p. 7). According to the CCDC's log report, during this time Plaintiff made purchases from the commissary, regularly accepted meals, was allowed recreation time, watched television, received and sent mail, showered daily, wrote letters and was provided cleaning supplies for his cell. (ECF 23-3, pp. 53-64). Plaintiff disputes he had access to a television during this time and claims he was not allowed to go outside for recreation. (ECF No. 27, p. 28). During this time CCDC staff performed regular well-being checks on Plaintiff. (ECF No. 23-3, pp. 53-64). The CCDC's log record for the time Plaintiff was held in Pod 5 does not contain any notations of any complaints from Plaintiff regarding the conditions in his cell. *Id.*

On or about November 18, 2015, Plaintiff filed a grievance requesting his legal papers be returned. "Mr. Doug Woods replied back stating your papers was collected as evidence." (ECF No. 1, p. 8). Plaintiff also claims he filed grievances concerning his toilet not flushing and the roof leaking. *Id.* at p. 10. However, he has not identified the dates of these grievances. Neither Plaintiff nor Defendants have provided the Court with copies of these grievances.

On December 7, 2015, Plaintiff escaped from the CCDC. Plaintiff claims he escaped "because he couldn't get medical care for the serious knot on the back of his head, being rain on due to the linking roof, and toilet not flushable." (ECF No. 27, p. 7). The following day Plaintiff

was arrested and charged with Escape – III, Criminal Mischief I, Breaking or Entering, and Burglary – Commercial.  (ECF No. 23-6, pp. 5-20).  After Plaintiff's escape, a search warrant was issued to look through Plaintiff's legal papers that had been seized back on November 15, 2015.  According to Defendant Blair, the legal papers are currently being held in evidence at the Columbia County Sheriff's Office, pursuant to orders of the State Court and Prosecuting Attorney.  (ECF No. 23-8, p. 2).

Plaintiff returned to the CCDC on December 8, 2015 where he was housed in Detox until December 11, 2015.  (ECF No. 27, p. 8).  Plaintiff was then moved to Holding Cell 2 where he remained until January 8, 2016 when he was transferred to the ADC.  During this time, Plaintiff made approximately 21 purchases from the commissary.  (ECF No. 27, p. 8).  He also accepted meals, wrote letters, read Arkansas law books, and met with his attorney.  *Id.*

On November 16, 2016, Plaintiff filed a lawsuit pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of Mississippi unrelated to the facts in the instant case.  *See Badger v. Fisher et al.*, Case No. 5:16-cv-107 (ECF No. 1).  During this litigation, Plaintiff testified in a *Spears* hearing that the defendants placed him and two other inmates in a two-man cell for approximately one month.[1] The defendants were granted summary judgment and the case was dismissed on February 27, 2019.  *Id.* at (ECF No. 112).

**B.  Policies of the CCDC**

It is the policy of the CCDC that a detainee may be administratively segregated from the general population of the Detention Facility only, and to the extent necessary, to maintain order

---

[1] "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  *Davis v. Scott*, 157 F.3d 1003, 1005-06 (5th Cir. 1998).  The *Spears* hearing testimony becomes a part of the total filing by the *pro se* applicant.

and ensure security.    Absent a separate privilege deprivation decision, an administratively segregated detainee is entitled to the same privileges as detainees within the general population of the Detention Facility.    Privilege deprivation must be rationally related to the objectives of maintaining order and ensuring security.  (ECF No. 23-5, p. 1).  Administrative Segregation is defined as the physical separation of a detainee from the general population of the Detention Facility based on: 1) need for protective custody; 2) communicable disease; 3) severe mental defect; or 4) behavior which threatens the order of security of the Detention Center.  *Id.*

The CCDC also has a written policy outlining "due process" that is provided to detainees when they are administratively segregated from the general population of the facility.  This policy provides in part:

    a.    Due Process (1) Pre-Segregation Hearing [-] Except for emergencies, the detainees "side of the story" is heard before deciding to segregate the detainee or as early as possible. (2) Post-Segregation Hearing [-] If administrative segregation is an emergency, the detainee's "side of the story" is heard after deciding to segregate the detainee. (3) Factual Basis (a) Any decision to administratively segregate a detainee must be rationally related to the objectives of maintain order or ensuring security. (b) The detainee is informed of the factual basis for administrative segregation following the hearing.
    b.    Review (4) An Administrative segregation decision is reviewed each day. (5) Segregation is continued during the next shift only if there continues to be a factual basis for administrative segregation.  Administrative segregation may be renewed from day to day as long as a factual basis for segregation exists.
    c.    Privilege Deprivation [-] An administratively segregated detainee may be deprived of normal privileges provided: (6) The behavior of the detainee has adversely affected the order or security of the Detention Facility. (7) The deprivation is rationally related to controlling the behavior that resulted in the deprivation. (8) The privilege is restored when the desired change in behavior is effected.

(ECF No. 23-5, p. 1).

In addition, the CCDC recognizes that all inmates shall have reasonable access to the courts through counsel whether appointed or retained, and in the event counsel has not been retained or

appointed, the inmate should have reasonable access to law library materials. (ECF No. 23-1, p. 2).

It is also the policy of the CCDC to provide a clean and healthy environment for both detainees and staff. (ECF No. 23-5, p. 3). The policy specifically states "toilets, urinals, sinks and showers shall be cleaned daily. Plumbing shall be maintained in good working condition." *Id.* Pursuant to this policy, "all detainees are expected to participate in cleaning their own cell areas." *Id.* at p. 4.

### C. Procedural Background

Plaintiff filed his Complaint on August 22, 2018, naming Kelly Blair, Koby Schmittou, and Janet Delaney as Defendants. (ECF No. 1). Plaintiff alleges all three Defendants "Interference With Plaintiff' First Amendment Access To Court" when they confiscated his legal papers on November 18, 2015 without cause. *Id.* at p. 4. Plaintiff alleges several affidavits were among the legal papers confiscated and because he did not have the affidavits, he claims one of his pending cases has been delayed, he was convicted in one of his criminal cases, and a § 1983 case filed in Mississippi was dismissed. *Id.* at. p. 9.

Second, Plaintiff claims Defendant Delaney violated his right to due process when she placed him in segregation from November 18, 2015 until December 7, 2015 for an alleged "rule violation, but did not provide Plaintiff with a notice of the violation, a violation report, conduct an investigation, or allowed the plaintiff to present witnesses although there was no disciplinary hearing." (ECF No. 1, p. 5). Third, Plaintiff alleges he was subjected to unlawful conditions of confinement during this time because he was housed in "a unhumane evnoirment of the jail without a flushable toilet…Several days thereafter it begined to rain and the plaintiff was getting rained on as a reslt of the roof leaking." *Id.* at pp. 5, 10.

Plaintiff is suing Defendants in their official and individual capacities and seeks compensatory and punitive damages. He also asks Defendants to "immediately return all my legal papers." (ECF No. 1, p. 7).

On April 19, 2019, Defendants filed the instant Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) Plaintiff was not denied access to the Courts; 2) Plaintiff was not denied due process of law by being placed in segregation; 3) Plaintiff was not subjected to unconstitutional conditions of confinement; 4) Defendants are entitled to qualified immunity; and 8) there is no basis for official capacity liability. (ECF No. 21). Defendants also filed a Brief in Support of the motion (ECF No. 22) and a Statement of Facts with supporting exhibits. (ECF No. 23). Plaintiff filed a Response to the motion on June 6, 2019. (ECF No. 27). The Response is entitled "Plaintiff's Reply to the Defendants Motion for Summary Judgments" and includes a Statement of Disputed Facts (ECF No. 27, pp. 4-13) and a Brief in Support (ECF No. 27, pp. 15-26) with accompanying exhibits.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing*, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A.  Denial of Access to the Courts

Plaintiff alleges Defendants denied him access to the courts when they searched his Pod and confiscated his legal paperwork on November 18, 2015 without probable cause. Plaintiff claims three affidavits and discovery material were seized which caused a delay in one of his criminal cases, caused him to be convicted in another, and resulted in the dismissal of one of his *pro se* civil rights cases. Defendants argue that an access to courts claim requires proof of an actual injury and Plaintiff has failed to offer any proof he was injured.

#### 1.  Probable Cause for Search and Seizure

Plaintiff's claim that the search of his Pod in the CCDC was without probable cause is without merit. The law is clear that inmates have no reasonable expectation of privacy in their prison cells entitling them to protection against unreasonable searches. *Hudson v. Palmer,* 468 U.S. 517 (1984).

As for the seizure of Plaintiff's legal papers, the record demonstrates the papers were taken on November 18, 2019, after a search of the Pod in which he was housed led to the discovery of a cell phone believed to be Plaintiff's, and after Investigators believed Plaintiff was planning to escape from the CCDC. The legal papers were then turned over to the prosecuting attorney where they are still being retained today. Less than two months prior to the search, Plaintiff was formerly charged with furnishing prohibited articles inside the CCDC, including a cell phone. Investigators believed Plaintiff was rolling some of the papers up to use as a device to reach under doors to obtain contraband. It is well settled that an interest in protecting the safety and security of a correctional institution is a legitimate penological interest "central to all other correctional goals." *Pell v. Procunier,* 417 U.S. 817, 823 (1974). Accordingly, the Court finds the seizure of his legal papers on November 18, 2019 was connected to a legitimate penological interest of security within the CCDC.

### 2. Access to the Courts

The Supreme court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods. *See Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011). The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts. *Tyler v. Woodson*, 597 F.2d 643, 644 (8th Cir. 1979).

As a general principle, "[t]o prove a violation of the right of meaningful access to the courts, a prisoner must establish that the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted). To establish such hindrance, there must be some evidence that conduct by prison officials adversely affected the outcome of a prisoner's litigation. *See, Entzi v. Redmann,* 485 F.3d 998, 1005 (8th Cir. 2007) (affirming summary judgment where prisoner was unable to show how prison policies prevented him from timely filing habeas petition); *Kind v. Frank,* 329 F.3d 979, 981 (8th Cir. 2003) (upholding summary judgment where prisoner did not specify a legal claim that was prejudiced by prison officials' interference); *Cody v. Weber,* 256 F.3d 764, 770 (8th Cir. 2001) (ruling where prison officials limited a prisoner's access to voluminous legal papers, he "could not avoid summary judgment because he did not designate specific facts showing that he suffered prejudice").

Here, Plaintiff states that Defendants confiscated legal papers he intended to use to defend himself in a criminal case and to support his claims in a 1983 civil rights action. He specifically claims:

> The taking of Plaintiff legal papers interfered with ability access the 3rd Judicial District Court of Union Parish, Louisiana because defendant Blair Schmittou and Delaney took his legal paper and has withheld them for 2 years and 9 months. Plaintiff still has not received his papers and his charges in Union Parish, Louisiana are still pending because without the discovery material he cannot properly litigate the facts of his case. In that case at that time the plaintiff did not have an attorney and was representing himself. In plaintiff case in Amite county Mississippi plaintiff had an attorney but was filing motions in that court to remove his attorney for failure to communicate. In that case the plaintiff had affidavit from the actual suspect whom held up for ownership of the crime. As a result of the case being prolonged and the witness becoming lost the plaintiff could not prove his innocent

in that trial because the defendant not only took his legal work but also his evidence to prove his innocent.  As a result the plaintiff was sentenced to seven years day for day in the Mississippi Department of Correction to be ran consecutive to all other sentences imposed.

The defendant prejudice the plaintiff ability to access the United States District Court of Southern with his 42 U.S.C. 1983 lawsuit against Marshal Fisher, Sheriff Tim Wroten and others wherein the defendant had took the lawsuit and plaintiff evidence such as an affidavit from Melvin Strout, Jeremy Bradley, Brianna Hall and Yolonda Adams.  Although, plaintiff was later able to draft a new lawsuit in which was filed in the United States District Court in November 2016, but he could not obtain a duplicate affidavit from the witnesses because he was incarated in Arkansas while (3) three witnesses was incarcerated in Mississippi and one in the Federal prison system.  As a result of the defendant taking the legal material and affidavits of these witnesses several of the plaintiff's claims in that particular lawsuit was dismissed.

(ECF No. 1, pp. 8-9).

Plaintiff first mentions a case  in the "3rd Judicial District court of Union Parish, Louisiana" and claims because his legal papers were taken and withheld from him, his charges in the case are still pending "because without discovery material he cannot properly litigate the facts of his case." Based on the limited description of this case, the Court has no idea when the case was filed, whether it is a civil or criminal matter, what the issues are, or whether Plaintiff had an opportunity to request copies of the discovery Plaintiff claims he had in his possession when his legal papers were seized.  In addition, an allegation that a proceeding has been delayed does not in itself establish injury or prejudice.  A delay is only prejudicial if it results in "actual substantial prejudice to specific litigation. *Johnson v. Barczak,* 338 F.3d 771 (7th Cir. 2003).  The Court finds Plaintiff has failed to establish that he was injured or prejudiced by the confiscation of his legal papers in the case he refers to as pending in the "3rd Judicial District court of Union Parish Louisiana".

The second case in which Plaintiff claims he was prejudiced by the taking of his legal papers is a criminal case in Amite County Mississippi where he was represented by counsel, tried

by a jury, and convicted.  As clarified in his Brief in Support of his Response to Defendants' motion for summary judgment, Plaintiff states he had an affidavit from a Mr. Jeffery White, "the acutal suspect in his Amite County, Mississippi case..." (ECF No. 27, p. 19).  Plaintiff claims Mr. White had written an affidavit on Plaintiff's behalf "owning up to the crime he had commit in which Plaintiff was charged for."  Plaintiff claims Mr. White passed away prior to Plaintiff's trial on July 26, 2017 and "the state of Mississippi benefited from the death of Mr. White, but the affidavit from Mr. White that was confiscated by the defendant would have been allowed in Mr. Badgers trial absent Mr. White."  *Id.*  Plaintiff goes on to state he "believes that, had the jury in his criminal trial been able to see or hear the testimony of Mr. White either in person or by affidavit, that the outcome of his trial would have resulted in a 'not guilty' verdict."  *Id.* at p. 20.  Plaintiff's claim of prejudice based on the missing affidavit of Mr. White is without merit for several reasons.

First, Plaintiff admits he was represented by counsel in the Amite County, Mississippi case and the trial was not held until almost two years after his legal paperwork was taken by Defendants. Plaintiff's attorney could have subpoenaed Mr. White's affidavit from the prosecuting attorney in Arkansas if he or she believed it would have assisted in Plaintiff's defense in his criminal trial. Even if Plaintiff had not been represented by counsel, he could have requested a copy of the affidavit himself after being transferred from the CCDC prior to his trial.  Neither he nor his counsel attempted to obtain the alleged affidavit.  Moreover, it is questionable whether Mr. White's affidavit would have been admissible in Plaintiff's criminal trial even after his death.  Even if the affidavit had been presented to a jury, it is pure speculation to assume Plaintiff would have been acquitted.  Finally, the Court notes that the taking of Plaintiff's legal papers back in 2015 does not prevent him from seeking post-conviction relief through the appeal process or a *habeas* petition.

Finally, Plaintiff claims a lawsuit he filed in 2016 in Mississippi was dismissed because two affidavits from Mississippi inmates were taken from him back in 2015 by Defendants. Plaintiff claims the affidavits signed by Melvin Strout and Jeremy Bradley, inmates who were housed with him in the Amite County, Mississippi jail, supported his claim that he was housed in a two-person cell at the jail with three people when the defendants in the case disputed this fact. He goes on to state because he did not have the affidavits to use in the Mississippi civil rights case he was "hindered from properly arguing his case where his confiscated affidavit would have carried great weight that would have resulted in a denial of those defendant Summary of Judgment." (ECF No 27, p. 19). Plaintiff's claim is not supported by the facts.

On November 16, 2016, Plaintiff filed the above-referenced lawsuit pursuant to 42 U.S.C. § 1983 *pro se* in the United States District Court for the Southern District of Mississippi against Marshal Fisher, Sheriff Tim Wroten and others arising from incidents which allegedly took place while he was incarcerated in the Amite County Jail in St. Liberty, Mississippi. *See Badger v. Fisher et al.*, Case No. 5:16-cv-107 (ECF No. 1). During this litigation, Plaintiff testified in a *Spears* hearing that the defendants placed him and two other inmates in a two-man cell for approximately one month. The defendants were granted summary judgment and the case was dismissed on February 27, 2019. *Id.* at (ECF No. 112). In the order granting summary judgment and dismissing the case, the Court stated "Defendants' assertions [that Plaintiff was not housed in a two-man cell with two other inmates], however, are contradicted by Plaintiff's sworn testimony provided during the *Spears* hearing. Plaintiff specifically testified that Defendants placed him and two other inmates in a two-man cell for approximately one month. This particular testimony concerned events within Plaintiff's own personal knowledge." *See Badger v. Fisher et al.*, Case No. 5:16-cv-107 (ECF No. 112, p. 6). Even accepting Plaintiff's allegations as true, the Judge in

the Mississippi case granted the defendants' summary judgment motion and dismissed the case. Clearly, the affidavits of Strout and Bradley would not have made any difference in the outcome of that court's decision on summary judgment. Therefore, Plaintiff has failed to establish he suffered any prejudice when the affidavits were taken from him at the CCDC in 2015.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims he was denied access to the courts when his legal papers were seized.

**B. Due Process**

Plaintiff claims he was denied due process when Defendant Delaney moved him to segregation from November 18, 2015 through December 7, 2015 without notice and a hearing.[2]

"In order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). When deciding whether an individual was afforded procedural due process a court employs a two-step analysis. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989). First the court must determine whether the individual holds a protected liberty or property interest. *Id.* If the court finds a protected interest, the question becomes whether the state provided sufficient due process prior to depriving that individual of the protected interest. *Id.*

"To prevail on such a claim based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Rahman X v.*

---

[2] Plaintiff also argues Defendants failed to follow the CCDC's policy regarding due process when a detainee is moved to segregation. An internal jail policy does not create a constitutional right, nor does a prison official's failure to follow such a regulation rise to the level of a § 1983 claim. *See Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir. 1996) (no federal constitutional liberty interest in having state officers follow state law).

14

*Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (alteration omitted) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An inmate's liberty interests are limited to the nature of confinement and do not extend to procedural rules imposed by the state. *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("If [the plaintiff] has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by the which the state believes it can best determine how he should be confined."); *see also Swenson v. Trickey*, 995 F.2d 132, 134 (8th Cir. 1993) (holding that "[p]rocedural guidelines, such as a mandatory hearing, are not enough to create a liberty interest").

Here, Plaintiff was placed in segregation after a search was conducted on November 18, 2015 and a cell phone was found hidden in the shower in his Pod. Prior to this search the record reflects there was an ongoing investigation of Plaintiff involving possession and use of prohibited articles at the CCDC including controlled substances and cellular telephones. (ECF No. 27, pp. 43-49). Plaintiff remained in segregation through December 7, 2018 for a total of nineteen days. During the time he was in segregation, Plaintiff was permitted to be out of his cell each day to shower, he was allowed to make purchases from the commissary, and he was provided access to legal forms, mail and laundry. However, Plaintiff claims he did not have access to a television or outside recreation.

The Court finds Plaintiff has failed to establish any liberty interest during his time in segregation between November 18, 2015 and December 7, 2015, which would necessitate due process. As previously stated, a prisoner has a liberty interest in freedom from restraints that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Here, the short amount of time Plaintiff spent in segregation combined with the conditions of his confinement (shower usage, access to the commissary, reading materials)

15

demonstrate he was not subjected to any significant hardship as compared to ordinary prison life. The Eighth Circuit has held that much longer periods in administrative segregation than that experienced by Plaintiff, with loss of privileges, does not implicate a liberty interest triggering due process protections.  *See Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (inmate was not deprived of liberty interest during nine months in administrative segregation); *Rahman X*, 300 F.3d at 974 (inmate's placement in administrative segregation for twenty-six months without a disciplinary charge or conviction and during which inmate could not watch television in his cell did not "demonstrate that his liberty interest was curtailed"); and *Furlough v. Brandon*, 2009 WL 4898418 at *2 (E.D. Ark. Dec. 15, 2009) (inmate plaintiff failed to state a due process claim after being assigned to administrative segregation for nearly nine months). Cf. *Williams v. Hobbs*, 662 F.3d 994, 998 (8th Cir 2011) (concluding that 12-year confinement in administrative segregation triggered a liberty interest entitled to due process protection).  Simply put, Plaintiff's nineteen (19) days in segregation combined with the conditions of his confinement (shower usage, access to the commissary, reading materials) did not trigger a liberty interest entitling him to due process protection.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claim.

## C.  Conditions of Confinement

Plaintiff alleges he was subjected to unlawful conditions of confinement at the CCDC while he was in segregation in Pod 5 between November 18, 2015 and December 7, 2015.  In his affidavit submitted in response to Defendants motion for summary judgment Plaintiff states, "…my toilet was out of order the entire time.  I could use it, but couldn't flush it…I had to breathe in the smell of my own waste…my roof was leaking causing me to be rained on in cold month of December,

16

2015…" (ECF No. 27, p. 28).   Plaintiff claims he submitted grievances about these conditions to Defendant Delaney and in response she told Plaintiff to "deal with the toilet" and simply ignored the grievance about the leaking roof.  (ECF No. 1, p. 10).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.   The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner."  *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  *Id.*  However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979).

"[I]mates   are   entitled   to   reasonably   adequate   sanitation   [and]   personal hygiene…particularly over a lengthy course of time."  *Beaulieu v. Ludeman*, 690 F.3d 1017 (8th

Cir. 2012) citing *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). "Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months." *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (quotations and citations omitted); *see also Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) ( holding that where plaintiff was subjected to an "overflowed toilet in his cell for four days," such "allegations regarding 'raw sewage' d[id] not rise to a level of constitutional significance' because plaintiff 'did not allege that he was exposed to disease or suffered any other consequences of the exposure'); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (holding no Eighth Amendment violation where prisoner was confined to unsanitary cell for eleven days and noting that cleaning supplies were available to the prisoner).

Even accepting Plaintiff's claims that Defendant Delaney was aware that the toilet in his cell in Pod 5 would not flush and the roof leaked, his claims against her based on conditions of confinement still fail because there is no evidence Plaintiff suffered any harm from these conditions during his segregation. Plaintiff has not alleged he suffered any injury resulting from exposure to the toilet that would not flush or the leaking roof during his time in segregation. He simply claims he had to "smell his own waste" and he was "cold" in December when it rained. The Court finds any discomfort Plaintiff may have suffered during his time in segregation in Pod 5 at the CCDC to be *de minimis,* and as a result does not implicate the Constitution. *See Smith,* 87 F.3d at 268. Accordingly, Plaintiff's condition of confinement claims fail as a matter of law and Defendant Delaney is entitled to summary judgment on this issue.

### D. Official Capacity Claims

Plaintiff also sued Defendants in their official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity

18

claims against Defendants are treated as claims against Columbia County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Columbia County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff has failed to produce any summary judgment evidence of a policy or custom of Columbia County that contributed to the alleged violation of Plaintiff's constitutional rights. Moreover, Plaintiff has failed to establish an underlying constitutional violation. Thus, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.[3]

## IV. CONCLUSION

For the reasons stated above, I recommend Defendants' Motion for Summary Judgment (ECF No. 21) be **GRANTED** and Plaintiff's claims against all Defendants be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

---

[3] Because the Court finds Plaintiff's claims are not cognizable as constitutional claims, it need not address the issue of whether Defendants are entitled to qualified immunity.

objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 24th day of July 2019.

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE